Hillsborough County Probate Court
No. 83-480

### *In re* ESTATE OF MARY MARTIN

November 13, 1984

*Winer, Pillsbury and Bennett*, of Nashua (*S. Robert Winer* on the brief and orally), for the plaintiff.

*Gregory H. Smith*, attorney general (*Marc R. Scheer*, assistant attorney general, on the brief, and *Leslie J. Ludtke*, assistant attorney general, orally), for the State.

BATCHELDER, J.  The question raised in this appeal is whether the tax exemption for a spouse of a lineal descendant under the legacies and successions tax statute, RSA 86:6, II (Supp. 1983), con-

tinues when an exempted spouse remarries following the death of the lineal descendant. We hold that the tax exemption is extinguished by the remarriage.

The facts of the case are stipulated by the parties. In 1933, the plaintiff, Evelyn R. Thompson, married Kenneth Martin, the son of Mary Martin. Kenneth Martin died in 1956. In 1959, the plaintiff married William Thompson. William Thompson died in 1977. Mary Martin died in 1982, leaving her entire estate to Evelyn Thompson. A legacy tax was assessed against that bequest by the New Hampshire Department of Revenue Administration. Thompson paid that assessment and sought a refund in the Hillsborough County Probate Court (*Cloutier*, J.) on the ground that RSA 86:6, II (Supp. 1983) exempts bequests to spouses of lineal descendants from the legacy tax. This appeal followed the probate court's refusal to recognize the exemption.

The pertinent language at issue in RSA 86:6, II (Supp. 1983) is as follows:

> "Real and personal property of the decedent shall be exempt from the [legacies and successions] tax imposed in paragraph I, if it passes to or for the use of . . . (b) the decedent's lineal ascendants and decedent's lineal descendants . . . *together with the spouses of said ascendants and descendants.*"

(Emphasis added.)

We have rejected the contention in New Hampshire that tax exemption statutes are to be construed with rigorous strictness. *Town of Gilford v. State Tax Commission*, 108 N.H. 167, 168, 229 A.2d 691, 693 (1967).

Rather, in construing tax statutes, we are "guided by the well-settled principle of this court that a tax exemption is construed to give full effect to the legislative intent of the statute." *Appeal of Public Serv. Co. of N.H.*, 124 N.H. 79, 83, 470 A.2d 855, 857 (1983). Absent a formal legislative history of the statute, we must glean the intent of the legislature from the plain meaning of the language of the statute. *Id.* at 84, 470 A.2d at 858.

The operative language of the statute affords the tax exemption for "the spouses . . . of lineal descendants." The phrase is not defined in the statute.

The plaintiff argues that the intent of the legislature in extending the exemption to spouses of lineal ascendants and descendants was to broaden the application of the exemption to include relationships of affinity as well as consanguinity. She further argues that this

relationship of affinity between "in-laws" continues after the death of the deceased spouse and irrespective of the subsequent remarriage of the surviving spouse.

In support of this asserted legislative intent, the plaintiff offers the text of comments made on April 24, 1975, at the Senate Ways and Means Committee hearing on SB 251, the bill that extended the exemption to spouses of lineal ascendants and descendants. *See* Laws 1975, 212:1. The reference from that hearing which is of potential assistance in this case is Senator Bradley's comment made to the three senators present:

> "In the present law you can leave property to ascendants, that is your father, grandfather etc. or descendants or your spouse without paying a tax. This bill says you can leave property to your daughter-in-law, stepmother, spouses ascendants or descendants.
>
> The reason for it is that from a standpoint of good estate planning the sons-in-law and daughters-in-law are provided for. It does not make sense that they should be taxed."

Hearing on SB 251 (committee records from Secretary of State, Division of Records Management and Archives).

At the outset, we note some reservation in imputing too much weight to comments of proponents of bills offered in legislative committee hearings, except possibly to confirm a suspected meaning. *See* Dickerson, *Statutory Interpretation: Dipping into Legislative History*, 11 HOFSTRA L. REV. 1125, 1131 (1983). This concern notwithstanding, Senator Bradley's use of "daughters-in-law" and "sons-in-law" was merely an informal way of expressing the concept of a descendant's spouse. The comments offer no clue on the question of whether a daughter-in-law or son-in-law *retains* that legal relationship following the death of the lineal descendant and remarriage of the son-in-law or daughter-in-law.

■ We are left, therefore, with the plain meaning of the term "spouses" as the legislature used it. Our review of a variety of sources, as well as common parlance, leads us to the conclusion that the spousal relationship terminates upon remarriage for the purpose of this tax statute.

The American Heritage Dictionary of the English Language (Rev. 1981) defines "spouse" as "one's marriage partner; a husband or wife." Webster's Third New International Dictionary of the English Language (Rev. 1961) defines "spouse" as "a man or woman joined in wedlock: married person: husband, wife." The derivation is from the Latin for a betrothed man or woman. *Id.*

Our view of these definitions, standing alone, is that they convey an exclusive concept of "spouse," that upon one's becoming the spouse of another, one ceases to be the spouse of the previous deceased partner.

The cases in other jurisdictions which have considered preferred tax classifications for "the husband of a daughter" of a decedent generally hold that the preferred status is not applicable to the surviving husband after he remarries following the death of his first wife. Annot., 81 A.L.R. 2d 1230, 1233 (1962). Of the cases cited in that annotation for the proposition, we would adopt the view expressed in *Canal Bank et al. v. Bailey*, 142 Me. 314, 51 A.2d 482, 483 (1947), that the remarriage of the son-in-law or daughter-in-law, and not simply the death of the lineal descendant, extinguishes the in-law relationship. *Cf. Todd v. County of Box Butte*, 169 Neb. 311, 324–25, 99 N.W.2d 245, 254 (1959) (characterized in 81 A.L.R. 2d at 1234 as suggesting that the preferred tax status terminates upon the death of the lineal descendant).

We are aware of the cases holding to the contrary. *E.g.*, *Matter of Ray*, 13 Misc. Rep. 480, 35 N.Y.S. 481 (Surr. Ct. 1895); *In re Rhead's Estate*, 228 Mich. 220, 284 N.W. 706 (1939). We would concur with the analysis of *Matter of Ray supra* up to and including its determination that the term "husband" as used in that statute affording an exemption to the "wife or widow of a son" and the "husband of a daughter" exempted both a husband and a widower. We would further concur that the purpose for affording the preferred tax status derives from the existence of the in-law relationship. However, we view the in-law relationship as presumptively *exclusive*, at least for the purposes of the economic incentives embodied in this tax statute. Had the legislature not intended this exclusive concept of "spouse" when it carved out this exemption, it could have and should have said so.

We are not persuaded that the same policy reasons prompting the legislature to provide the tax exemption for a son-in-law or daughter-in-law apply upon that person's remarriage. Upon remarriage, the former son-in-law or daughter-in-law shares a new affinity with another spouse and family. He or she has new "in-laws." While the love and close ties which the person shared with his or her former "in-laws" may persist, there is nothing inherent in that former in-law relationship so deserving of special protection as to cause us to presume the legislature intended to depart from the plain meaning of "spouse" as an exclusive concept.

In reaching this conclusion, we caution that we have considered and do not address other situations in which terms like "spouse," "widow," "widower," "wife" or "surviving spouse" may be determi-

native of legal rights and duties. Each term carries its own connotation, and its meaning in a given context may vary depending on the policies advanced by the statute.

*Affirmed.*

All concurred.