Rockingham
No. 92-331

BRUCE E. ALLEN & a.

v.

SENTRY INSURANCE, A MUTUAL COMPANY & a.

August 31, 1993

*Kfoury & Elliott, P.A.*, of Manchester (*Charla Bizios Labbe* on the joint brief), for the plaintiffs, and *McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Ralph F. Holmes and James J. Tenn, Jr.* on the joint brief, and *Mr. Holmes* orally), for defendant Marianne DeWyngaert, administratrix of the estate of James A. O'Connell.

*Yakovakis, McDonough & Lindh*, of Manchester (*James G. Walker* on the brief and orally), for defendant Sentry Insurance, A Mutual Company.

BROCK, C.J.   Defendant Sentry Insurance Company (Sentry) appeals an order of the Superior Court (*Barry*, J.) requiring Sentry to provide $300,000 in coverage in connection with an automobile accident in 1986 that killed James O'Connell. On appeal, Sentry argues, *inter alia*, that O'Connell did not qualify as a "residence employee" under the applicable insurance policy and, therefore, no coverage is available. We reverse.

Bruce and Debbie Allen operate Allen's Coal Company, Inc. (Allen's Coal) from their home in Derry. Allen's Coal sells coal for fuel to customers in southern New Hampshire. The coal is stored in bulk and packaged at the Allens' residence and is then delivered by truck to customers. Debbie Allen is the sole stockholder of Allen's Coal, and Bruce Allen is an employee of the company.

In December 1984, Sentry issued a homeowner's insurance policy to Bruce and Debbie Allen to protect their residence in Derry. This policy contained endorsements that extended coverage for the workers' compensation claims of residence employees and for the business use of the residence premises. The business use endorsement noted that the Allens' residence was used for the business purpose of selling and delivering coal. This policy was in effect at all relevant times.

On August 25, 1986, James O'Connell died from injuries sustained when Allen's Coal's delivery truck collided with another motor vehicle in Manchester. O'Connell was a passenger in the truck being driven by Bruce Allen, as the two were returning from a coal delivery. O'Connell worked in the Allens' coal business and did chores around the Allens' house and yard. His wages were paid entirely by Allen's Coal.

Bruce Allen filed a petition for declaratory judgment against Sentry and Marianne DeWyngaert, the administratrix of the estate of James O'Connell. The petition was later amended to include Allen's Coal as a plaintiff. The plaintiffs sought to establish that Sentry was obligated to provide coverage for liability arising from O'Connell's death. The trial court ruled that O'Connell was a "residence employee" under the Allens' homeowner's policy and, therefore, Sentry was obligated to provide coverage under the business use endorsement. Sentry appeals from the trial court's order.

■ ■   The interpretation of insurance policy language is ultimately a question of law for this court to decide. *Laconia Rod & Gun Club v. Hartford Acc. & Indemn. Co.*, 123 N.H. 179, 182, 459 A.2d 249, 250 (1983). "We construe the language of an insurance policy as would a reasonable person in the position of the insured based on a

more than casual reading of the policy as a whole." *Niedzielski v. St. Paul Fire & Marine Ins. Co.*, 134 N.H. 141, 146, 589 A.2d 130, 133 (1991) (quotations omitted). Ambiguous language in the insurance contract will be construed against the insurer. *Smith v. Liberty Mut. Ins. Co.*, 130 N.H. 117, 120, 536 A.2d 164, 166 (1987). The specific expectations of the insureds are relevant to our analysis "only in light of an ambiguity in the policy, or, in the absence of an ambiguity, if it is proved that the parties' prior dealings led the insured[s] to form a reasonable belief that the policy provided the claimed coverage." *V & V Corp. v. American Policyholders' Ins. Co.*, 127 N.H. 372, 380, 500 A.2d 695, 700 (1985) (quotation omitted).

The homeowner's insurance policy held by the Allens generally provides coverage for "all sums which the Insured shall become legally obligated to pay as damages because of bodily injury." The policy specifically excludes coverage for bodily injury "arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any motor vehicle owned or operated by . . . any Insured." This motor vehicle exclusion, however, does not apply "to bodily injury to any residence employee arising out of and in the course of his employment by any Insured."

The first question we must address is whether James O'Connell was a "residence employee" as defined in the policy. Unless he qualified as a residence employee, coverage under the policy for liability arising from the collision is excluded by the motor vehicle exclusion. The policy defines a residence employee as *"an employee of any Insured whose duties are in connection with the maintenance or use of the insured premises, including the performance of household or domestic services, or who performs elsewhere duties of a similar nature not in connection with any Insured's business."* (Emphasis added.)

▪ O'Connell was not a residence employee under the policy's definition because he was not an employee of an insured. The homeowner's policy unambiguously designates Bruce and Debbie Allen as the policy's insureds. At the time of the accident, however, O'Connell was serving as an employee of Allen's Coal, which was not an insured under the policy. The plaintiffs and O'Connell's estate argue that O'Connell worked for the Allens doing yard work and chores around their home as well as in the coal business. His wages, however, were paid entirely by Allen's Coal. Moreover, even if O'Connell could be considered an employee of the Allens when he did chores around their house, his employee status during those tasks would not carry over into his work in the coal business, which was for the benefit of

Allen's Coal, and in which O'Connell was engaged at the time of the accident.

Despite the clear language of the policy designating Bruce and Debbie Allen as insureds, the plaintiffs and O'Connell's estate argue that we should find coverage under the policy in accordance with the trial court's finding that "[b]ased on the parties' discussions, the Allens had a reasonable belief that liability coverage would be provided by Sentry for their coal business." The Allens had requested insurance for their business when they approached Sentry's agent about purchasing a policy, and Sentry's agent had reviewed Allen's Coal's existing business policy before issuing the homeowner's policy in dispute. The plaintiffs and O'Connell's estate contend that because the Allens believed that Sentry would provide liability coverage for the coal business, Allen's Coal should be considered a named insured under the homeowner's policy, thus making O'Connell an employee of an insured at the time of the accident.

The trial court's finding regarding the insureds' expectations does not lead us to find coverage in this case. As noted above, the insureds' expectations are relevant to our interpretation of an unambiguous insurance contract only when the parties' prior dealings led the insureds to reasonably believe that the policy provided for the coverage now claimed. See V & V Corp., 127 N.H. at 380, 500 A.2d at 700; Karol v. N.H. Ins. Co., 120 N.H. 287, 290–91, 414 A.2d 939, 941 (1980). As a preliminary matter, no evidence was presented at trial to suggest that the parties' dealings led the insureds to a specific expectation that liability arising from an automobile collision involving an employee like O'Connell would be covered under the homeowner's policy. Assuming that the Allens believed Sentry would provide liability coverage for the coal business, there is still no indication that they reasonably expected that sort of coverage to insure this type of accident. If the Allens had obtained a general liability policy from Sentry to insure Allen's Coal, that policy likely would have contained a motor vehicle exclusion similar to the one in the homeowner's policy, which would have precluded coverage in this case. See R. KEETON & A. WIDISS, INSURANCE LAW 1253 (practitioner's ed. 1988). The expectation that Sentry would provide liability coverage for the business is certainly not the same as expecting Allen's Coal to receive all the benefits and coverage under a homeowner's policy as a named insured. Without evidence of a reasonable expectation of specific coverage, we will not reform the unambiguous wording of the

homeowner's policy, and we conclude that Sentry is not obligated to provide coverage in this case.

*Reversed.*

All concurred.