Compensation Appeals Board
No. 97-093

APPEAL OF HCA PARKLAND MEDICAL CENTER

(New Hampshire Compensation Appeals Board)

October 14, 1998

*Devine & Nyquist*, of Manchester (*Lee C. Nyquist* on the brief and orally), for the petitioner, HCA Parkland Medical Center.

*Moquin & Daley, P.A.*, of Manchester (*Terrence J. Daley* on the brief and orally), for the respondent, David Graves.

JOHNSON, J. The petitioner, HCA Parkland Medical Center (Parkland), appeals the decision of the New Hampshire Compensation Appeals Board (board) awarding concurrent earnings, *see* RSA 281-A:15, III (Supp. 1997), to the respondent, David Graves. We reverse and remand.

Graves suffered a disabling accident in October 1993 at the Parkland Medical Center in Derry, New Hampshire, while working as a facilities technician. At that time, Graves held a second job as a press operator for Matheson Higgins Congress Press (Matheson Higgins) in Woburn, Massachusetts. The parties stipulated that Graves' combined average weekly wage at that time was $734.74, of which $309.94 was attributable to his employment at Parkland. For approximately seventeen months after the accident, Parkland's insurance carrier compensated Graves for his temporary total disability at a rate based on his combined earnings at both Parkland and Matheson Higgins. *See* RSA 281-A:15, III. In March 1995, Parkland requested permission from the department of labor to reduce Graves' benefits to reflect the average weekly wages earned at Parkland only. Parkland argued that the concurrent earnings statute did not include wages earned at Matheson Higgins because, as an out-of-state employer, Matheson Higgins was not "subject to" the New Hampshire Workers' Compensation Law. *Id.* The department of labor agreed, and its administrative ruling was upheld upon Graves' petition to a hearings officer. Graves appealed this decision to the board, which ruled by a two-to-one vote that Graves was entitled to compensation based on his combined average weekly wage from both employers. Specifically, a majority of the board held that "[a]lthough we recognize that Matheson Higgins is not a New Hampshire employer in the strict sense of the word," because RSA 281-A:15, III "was eligible for interpretation" in favor of the claimant, Graves would prevail. This appeal by Parkland followed.

On appeal, "[w]e will uphold an order of the board unless it is erroneous as a matter of law or the [petitioner] has demonstrated that the order is unjust or unreasonable." *Appeal of Gelinas*, 142 N.H. 295, 297, 700 A.2d 870, 871 (1997); *see* RSA 541:13 (1997).

Parkland argues that the board erred as a matter of law because the workers' compensation statute, on its face, prohibits inclusion of

Graves' Massachusetts earnings in the calculation of his average weekly wage. RSA 281-A:15, III provides in pertinent part:

> Where the employee is employed as of the date of injury concurrently by 2 or more employers subject to this chapter and is disabled from any such employment, "average weekly wages" shall be computed on the basis of the weekly wages received by the employee from all such employers at the time of the injury.

Parkland argues that because Matheson Higgins is a Massachusetts company and Graves performed his employment responsibilities for it exclusively in Massachusetts, Matheson Higgins was not an employer "subject to" New Hampshire's workers' compensation law at the time of injury. We agree.

■ This court is the final arbiter of the meaning of a statute, as expressed in the words of the statute itself. *See Linteau v. Gauthier*, 142 N.H. 460, 461, 703 A.2d 266, 267 (1997). "We interpret statutes not in isolation, but in the context of the overall statutory scheme." *Appeal of Ashland Elec. Dept.*, 141 N.H. 336, 340, 682 A.2d 710, 712 (1996) (quotations omitted). Although "we give undefined language its plain and ordinary meaning, we must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases found therein." *Id.* at 341, 682 A.2d at 713 (quotation omitted). "The nature and extent of compensation to the injured employee . . . is governed by the express statutory language and that which can be fairly implied therefrom." *Rooney v. Fireman's Fund Ins. Co.*, 138 N.H. 637, 638-39, 645 A.2d 52, 53 (1994) (quotation omitted).

In this case, we must determine whether at the time of injury, Matheson Higgins was "subject to" the statute. We have held that "[workers'] compensation may constitutionally be sought in any of the States with a legitimate interest in the employment relationship (State of employment contract, State of employment injury, or State of employee's residence)." *LaBounty v. American Insurance Co.*, 122 N.H. 738, 742, 451 A.2d 161, 163 (1982). Parkland suggests that the determination of whether Matheson Higgins is subject to RSA chapter 281-A should be made by examining Graves' contact with New Hampshire in his capacity as a Matheson Higgins employee. It further argues that because Graves' responsibilities during the course of his employment at Matheson Higgins were performed exclusively in Massachusetts, that company was not subject to our

workers' compensation laws. Graves, on the other hand, focuses on Matheson Higgins' contact with this State, namely that the company regularly sent salesmen and deliverymen, but not Graves, to New Hampshire. Graves contends that because Matheson Higgins conducted business in New Hampshire, it was "subject to" our workers' compensation laws.

■■ RSA chapter 281-A in effect in 1993 did not clearly set forth the parameters of when an employer is subject to the statute. Use of the phrase "subject to this chapter," however, plainly evinces an intent by the legislature to limit the employers and earnings that may be included in a concurrent earnings calculation. Graves argues, and the board held, that where the language of the workers' compensation statute is ambiguous, we construe it liberally in favor of the claimant "in order to give the broadest reasonable effect to the remedial purpose of workers' compensation laws." *Appeal of Griffin*, 140 N.H. 650, 654, 671 A.2d 541, 543 (1996). We will not, however, interpret the statute in favor of the claimant if such a construction is unreasonable. *See Petition of Correia*, 128 N.H. 717, 721, 519 A.2d 263, 266 (1986); *cf. Atwood v. Owens*, 142 N.H. 396, 398, 702 A.2d 333, 335 (1997) (refusing to interpret a statute in such a way as to lead to absurd results). An interpretation in favor of the claimant in this case would be unreasonable because it would effectively nullify the limiting language included in RSA 281-A:15, III. Further, it would make Matheson Higgins subject to our workers' compensation laws even though the company had no business locations in this State and the injured employee, as the board found and the record supports, "never did any work for Matheson Higgins in New Hampshire." *Cf. Lachapelle v. Town of Goffstown*, 134 N.H. 478, 479, 593 A.2d 1152, 1153 (1991) (court will not redraft statute to codify intention not expressed in plain language of statute).

In addition, we must interpret the limiting language of RSA 281-A:15, III reasonably in the context of the overall statutory scheme. *See Opinion of the Justices (Solid Waste Disposal)*, 135 N.H. 543, 545, 608 A.2d 870, 872 (1992). RSA chapter 281-A mandates that all employers, including homeowners hiring domestic help, *shall* secure workers' compensation insurance coverage for all employees. *See* RSA 281-A:5 (Supp. 1992) (amended 1994), :5-a, :6 (Supp. 1997); *cf. Town of Nottingham v. Harvey*, 120 N.H. 889, 895, 424 A.2d 1125, 1129 (1980) (the term "shall" requires mandatory compliance). Failure to comply with these provisions renders an employer liable for a variety of fines and penalties. *See* RSA 281-A:7

(Supp. 1992) (amended 1996). Employers with more than ten employees are required to file written safety programs with the department of labor, *see* RSA 281-A:64, II (Supp. 1992) (amended 1994, 1997), and since 1994, may be subject to periodic safety inspections. *See* RSA 281-A:64, IV (Supp. 1997). If we were to find Matheson Higgins subject to the chapter in this case, then it could be liable for fines if it has not complied with the statute's filing requirements even though, as the board found, "Matheson Higgins is not a New Hampshire employer in the strict sense of the word." No evidence was presented as to whether Matheson Higgins made any of the filings required of employers under the statute, or even elected to "accept its provisions by purchasing valid workers' compensation insurance." RSA 281-A:3 (Supp. 1997). Nor was there any evidence that any of Matheson Higgins' employees have filed for workers' compensation in this State. Graves contends, however, that at the time of his injury, Matheson Higgins was conducting business in New Hampshire. He thus argues that Matheson Higgins would have been subject to New Hampshire's workers' compensation laws if a Matheson Higgins employee had been injured in this State in the scope of that employment. We conclude that it would be an unreasonable reading of the statute to determine that an employer such as Matheson Higgins would be forced to comply with the above provisions because one of its employees, who is not the claimant, *might* have been injured.

Finally, we have reviewed the record with respect to Graves' remaining arguments and find them to be without merit and warranting no further consideration. *See, e.g., Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993). Accordingly, we reverse the board's order and remand this case for proceedings consistent with this opinion.

*Reversed and remanded.*

BRODERICK, J., sat but did not participate in the decision; the others concurred.